UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

RANDALL DAVID BAYS )
)
V. ) NO. 2:15-CV-170
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits under the Social Security Act was administratively denied by the defendant Commissioner following two hearings before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed Motions for Summary Judgment [Docs. 13 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 59 years old at the time of his administrative hearings before the ALJ, and considered a person of "advanced age" under the Social Security Regulations. 20 CFR Ch. III, Pt. 404, Subpt. P, App. 2, § 200.00(f). He has a high school education. The ALJ found that plaintiff could return to his past relevant work as a store clerk/cashier, which the ALJ found was semi-skilled with light exertion.

Plaintiff's medical history is summarized in his brief as follows:

> Plaintiff reported to Holston Valley Medical Center on January 24, 2013 for alleged injury to his abdomen, neck and back from a motor vehicle accident (Tr. 246, 258-260, 326). A CT imaging study of the abdomen and pelvis was performed with findings that included "A left posterolateral L4-5 disc herniation is evident" (Tr. 244, 338). Imaging studies of the lumbar and cervical spines were also performed on January 24, 2013 (Tr. 245, 262-263). The lumbar study found generalized spondylosis, intervertebral disc space reduction, and facet joint arthropathy (Tr. 245, 262). The cervical study revealed disc space reduction and spondylosis at C4-5, C5-6, and C6-7; right-sided foraminal stenosis at C5-6 and C6-7; and no apparent fracture or dislocation (Tr. 263, 337). Plaintiff returned to this location again on January 30, 2013 with reported continuing back pain (Tr. 250). Plaintiff reported having taken all but two of the muscle relaxers provided on January 24, 2013 and the pain was not controlled (Tr. 253). Plaintiff was given prednisone, oxycodone hcl / acetaminophen, and Flexeril upon discharge (Tr. 255).
> On February 14, 2013 Plaintiff was treated at Rural Health Services (Tr. 276-277). The reason for this visit was noted as "was in car accident in Jan" with reported continuing pain (Tr. 276, 278). The assessment / plan included

"Degeneration of lumbar or lumbosacral intervertebral disc", "Spinal stenosis in cervical region", and "Headache" (Tr. 276). The plan included ordering MRIs of the lumbar spine, the cervical spine, and the brain (Tr. 276). Medications were noted as Zestril, pravastatin, methocarbamol, and tramadol (Tr. 276).

On May 5, 2013, Plaintiff underwent MRIs of the lumbar spine and cervical spine at Medica Stand-Up MRI of Atlanta (Tr. 291-294). The findings from the lumbar MRI includedbroad based disc bulges at L1-2, L2-3, L3-4, and L5-S1; a broad-based disc bulge with superimposed left paracentral disc extrusion was found at L4-5; flattening of the thecal sac and partial effacement of the bilateral lateral recesses with contact of traversing L3 nerve roots was found at L2-3; and moderate to severe left neuroforaminal narrowing was found at L3-4 and L4-5 (Tr. 291). The cervical MRI found broad-based disc bulges at C2-3, C3-4, C4-5, C5-6, and C6-7; flattening of the thecal sac and minimal or mild flattening of the cord was reported at C3-4, C4-5, and C5-6; and moderate to severe right neuroforminal narrowing was found at C5-6 and C6-7 (Tr. 293).

On June 12, 2013, Plaintiff returned to Rural Health Services for hypertension, back pain, and hyperlipidemia (Tr. 297-298). Medications included pravastatin, Zestril, methocarbamol, tramadol, gabapentin, and hydrochlorothiazide (Tr. 297).

At the request of the Disability Determination Service [hereinafter "DDS"], Plaintiff attended a consultative evaluation on June 13, 2013, with Jon Wireman, M.D. (Tr. 299-300). Plaintiff reported allegations of back pain, hypertension, elevated cholesterol, and left hand pain (Tr. 299). Following examination and review of the provided medical records, Dr. Wireman gives the diagnoses and assessment as low back pain, hypertension, hyperlipidemia, and hand pain (Tr. 302). Based on the provided medical records, reported history, and the physical findings, Dr. Wireman opined to Plaintiff's functional restrictions (Tr. 302). The functional limitations were standing or walking for 4 hours out of an 8-hour shift, sitting for 6 hours out of an 8-hour shift, and lifting 10 pounds frequently (Tr. 302).

At the request of DDS, Francis Yamamoto, M.D. reviewed Plaintiff's information and rendered an opinion concerning physical conditions and limitations on July 26, 2013 (Tr. 58-60). This source opined to Plaintiff retaining the capacity to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk for about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday; and was limited bilaterally in handling (gross manipulation) (Tr. 58-59).

On June 28, 2013, Plaintiff was evaluated at Advanced Physical Therapy of Kingsport (Tr. 304-305). The treatment diagnosis was given as core inflexibility and weakness with the assessment given as decreased flexibility and strength in the core that limits ADLs (Tr. 304-305).

Plaintiff returned again to Rural Health Services on July 11, 2013 (Tr. 308-309). The assessment included lumbago, carpal tunnel syndrome and unspecified idiopathic peripheral neuropathy (Tr. 308). Plaintiff was given

3

instructions to obtain wrist splints for the carpal tunnel syndrome (Tr. 308).

On October 23, 2013, at the request of DDS, Saul Juliao, M.D. reviewed Plaintiff's information and rendered an opinion concerning physical conditions and limitations (Tr. 71-73). This source opined to Plaintiff retaining the capacity to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk for about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday; and was limited bilaterally in handling (gross manipulation).

Plaintiff returned to Rural Health Services on October 24, 2013 (Tr. 450-451). Plaintiff's "Chronic Problems" were listed as spinal stenosis in cervical region, headache, sciatica due to displacement of lumbar disc, backache, benign hypertension, and lumbar or lumbosacral degeneration (Tr. 450). On November 15, 2013, Plaintiff returned to this location and reported the gabapentin was ineffective in treating his hands and, now, right upper arm (Tr. 447). Plaintiff reported improvement of back pain on December 10, 2013, and April 29, 2014 (Tr. 439, 442). On March14, 2014, Plaintiff reported the right knee and low back still hurt sometimes with the physical examination finding mildly reduced ROM in the musculoskeletal region (Tr. 437). Plaintiff returned again to this location on July 15, 2014 (Tr. 430-433). Chronic problems included obesity, spinal stenosis in the cervical region, headache, and sciatica (Tr. 430).

[Doc. 14, pgs. 2-5].

At the first administrative hearing held on August 22, 2014, the ALJ took the testimony of a Ms. Donna Bardsley, a vocational expert ["VE"]. When asked by the ALJ to classify the plaintiff's past relevant work by the required level of exertion and the skill level, she stated that the plaintiff had two past relevant jobs. She stated that the job of truck driver was medium and semi-skilled. She opined that the job of convenience store clerk was medium and semi-skilled. She opined that neither of these jobs gave the plaintiff any transferrable skills. The ALJ then said "the State has him at a less than full range of light. He's going to grid at light. This hearing is over." (Tr. 51). The ALJ's reference to "grid at light" indicates that under the Medical-Vocational Guidelines, also known as the "Grid," even if the plaintiff could perform a full range of light work but had

4

no transferrable skills, he would be disabled *per se* at his age and educational level under Rule 202.06 of the Grid.

The ALJ elected to conduct a second administrative hearing on September 17, 2014. At the outset of that very brief hearing, the ALJ stated they were having a second hearing because he felt that the information the ALJ had about the plaintiff's past relevant work "was not entirely correct." (Tr. 30). Plaintiff's attorney was apparently aware of what the ALJ had discovered regarding the requirements of plaintiff's past relevant work, because he elected to have Plaintiff offer some additional testimony about that work before the VE was questioned by the ALJ. Counsel began to ask plaintiff about his past relevant work as a convenience store clerk. As counsel commenced to do this, the ALJ reminded him that the plaintiff had described that job in his work history report (Tr. 191), but allowed counsel to continue his questioning of the plaintiff (Tr. 32).

Plaintiff then agreed with counsel's statement that the work also entailed "filling drink dispensers with ice above [his] head," and that the store did not have computerized cash registers (Tr. 32). The ALJ then went on to question the VE, Dr. Adrian Hankins. Dr. Hankins, as did Mr. Bardsley at the prior hearing, opined that the plaintiff's truck driving job required medium exertion and was semi-skilled. However, based on the plaintiff's description of his convenience store clerk job in the work history report, Dr. Hankins stated that the job was "more similar to that of a sales clerk, which is a semi-skilled occupation…and requires light exertion." (Tr. 33). When asked by the ALJ if the plaintiff had any transferrable skills, Dr. Hankins opined that "the only transferability of

5

skills would be from the truck driving position" to another type of truck driving position, "but that occupation would typically require medium exertion." Dr. Hankins did not "think there are skills relevant for sedentary or light work outside of what he's done in the past." (Tr. 34). In other words, any skills from his convenience store clerk job would only be transferrable to that same job.

The ALJ then asked the VE some hypothetical questions. He asked if there would be jobs if "this person could do light work with frequent postural; occasional ropes, ladders, scaffolds; with handling, both upper extremities frequent; avoid concentrated exposure to hazards and …no non-exertional limitations." Dr. Hankins first stated that "those physical limitations would not preclude performance of the prior work as a convenience store clerk." (Tr. 34). Also, the VE identified other entry level occupations as a general cashier, housekeeping cleaner, and a cafeteria attendant which such a person could perform. (Tr. 33-34).

The ALJ rendered his hearing decision on October 10, 2014. The ALJ first defined the basic term "disability," which "is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Tr. 14). He then described the five-step sequential evaluation process found in 20 C.F.R. § 404.1520(a). At Step One, he found that the plaintiff was not engaging in substantial gainful activity and had not since his alleged onset of disability on January 24,

6

2013.  He then found, at Step Two, that the plaintiff had severe impairments of a history of carpal tunnel syndrome and sciatica.  (Tr. 16).  He also considered the plaintiff's obesity, as he was 6'1" tall and weighed 292 pounds.  The ALJ found that the plaintiff's obesity was present prior to his alleged onset date and did not prevent plaintiff's work activity at any time prior to the onset date. (Tr. 16-17).  He also found that the plaintiff's cholesterol and hypertension were controlled with medication and were not severe impairments.

At Step Three, he found that none of the plaintiff's severe impairments, either individually or in combination with other impairments, met or equaled the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At this step, he determined the plaintiff's residual functional capacity ["RFC"].  In this regard, the ALJ found that plaintiff had the RFC "to perform light work…which includes occasional climbing ladders, ropes or scaffolds; frequent postural limitations; frequent handling, bilateral upper extremities; and (should) avoid concentrated exposure to hazards."  (Tr. 17).

The ALJ then explained that in determining the plaintiff's RFC, he was required to evaluate plaintiff's credibility in relating the severity of his symptoms.  In this regard, the ALJ discussed the medical evidence in detail.  He noted that the plaintiff alleged his disability originated with a motor vehicle accident on January 24, 2013.  The x-rays taken at the emergency room showed some degenerative changes.  Plaintiff returned to the emergency room on January 30, 2013, complaining of pain which was "not controlled"

7

and stating that he had taken all but two of the muscle relaxers he had been given on January 24th. Plaintiff was noted to have no difficulty walking. Although he said movement of his trunk exacerbated his symptoms, he denied radicular numbness or tingling. The back exam showed normal muscle strength and range of motion. Dr. Kneff advised plaintiff that he could return to work on February 4, 2013. (Tr. 18).

The ALJ states next that Kingsport Medical Associates provided records showing that the plaintiff complained of low back pain on February 14, 2013. The exam showed no tenderness. He was diagnosed with lumbago and referred for physical therapy. On May 5, 2013 the plaintiff had an MRI which revealed multilevel degenerative changes with areas of mild canal stenosis and cord deformity, but with no cord signal abnormality. (Tr. 18).

The plaintiff filed his application for benefits about 3 months after his alleged onset date. Thus, Dr. Wireman examined the plaintiff for the State Agency on June 13, 2013. The ALJ notes that the physical findings were essentially normal, and in those areas where plaintiff maintained he had difficulty, Dr. Wireman noted "limited effort." The ALJ stated that plaintiff's poor effort during the exam limited Dr. Wireman's assessment. (Tr. 18-19).

The ALJ then discussed a visit by the plaintiff to a physical therapist. He noted plaintiff stated that "he wanted to pursue conservative care." The therapist noted "decreased flexibility and strength in the core," but that strength in the bilateral lower extremities was within functional limits. Plaintiff was given a list of exercises to do at

8

home. (Tr. 19).

On October 24, 2013 he was seen again at Kingsport Medical Associates and stated his back pain was stable and that he could walk five to ten blocks. Plaintiff told them he was only taking some of the prescribed medications. In spite of this, the ALJ noted that in December of 2013, plaintiff stated his back pain was improving and the exam of the lumbar spine revealed no tenderness. (Tr. 19).

The ALJ stated that an exam on April 29, 2014, showed no lumbar spine tenderness and that plaintiff reported he could walk 10 blocks. Plaintiff stated that he had seen a neurosurgeon and was told there was no more that needed to be done. An exam of the spine on July 15, 2014 was normal. (Tr. 19).

The ALJ then discussed the records relating to the plaintiff's carpal tunnel syndrome. When Dr. Wireman did his consultative exam on June 13, 2013, he had noted that plaintiff had on a wrist splint which nobody had prescribed, and had it on upside down. Dr. Wireman opined that there were no median nerve symptoms. On July 11, 2013, plaintiff told Kingsport Medical Associates he had numbness in his hands since the accident and had difficulty gripping the steering wheel. The nurse advised him to wear splints while doing household chores. (Tr. 19).

From all of this, the ALJ found that the plaintiff was not entirely credible in his testimony regarding the severity of his symptoms. The ALJ noted that the plaintiff could have some back and hand pain, but not to the extent plaintiff alleged. He noted the medical evidence showed plaintiff could sit, stand, walk and move about in a satisfactory

9

manner. He observed that plaintiff had not required aggressive treatment for pain and had not been referred to a pain management specialist or hospitalized. He noted the plaintiff's daily activities of preparing meals, doing laundry, etc. He found plaintiff credible only to the extent of the RFC finding. (Tr. 20).

The ALJ then stated that he gave the State Agency doctors some weight, but felt that plaintiff was more limited than their assessments indicated. Likewise, he found that plaintiff was "not as limited as determined by Dr. Wireman." (Tr. 20).

With the RFC he found, the ALJ opined that the plaintiff was capable of performing his past relevant work as a store clerk/cashier, as testified to by Dr. Hankins, the VE, and based upon the plaintiff's description of the job in his work history form at Tr. 191. (Tr. 20-21).

The ALJ then stated that, beyond plaintiff being able to return to his past relevant work at Step Four, if the analysis continued to Step Five, Dr. Hankins' testimony showed there were a significant number of other jobs the plaintiff could perform. (Tr. 21-22). Particularly, he noted that the plaintiff would not be disabled under the Grid if he could perform the full range of light work under Rule 202.07, which requires a person to have transferable skills. (Tr. 22). Based upon all of this, the ALJ found that the plaintiff was not disabled. (Tr. 22).

Plaintiff first argues that the ALJ did not properly evaluate the requirements of the plaintiff's past relevant work as a convenience store clerk, and that if he had, it would have been clear that the job went beyond the confines of light work set out in the ALJ's

10

RFC finding. He also argues that the ALJ did not properly evaluate the opinion of Dr. Wireman, the consultative physician who examined the plaintiff for the Commissioner at the State Agency level.

Before addressing the plaintiff's contentions, the Court notes that the Commissioner asserts that the plaintiff did not meet the fundamental requirement that a Social Security claimant's inability to work must continue, or be likely to continue, for at least 12 consecutive months in order to meet the statutory definition of "disability." 42 U.S.C. § 423(d)(2)(A). In that regard, the Commissioner points out that on January 30, 2013, when the plaintiff returned still complaining of pain following his accident on January 24, 2013, emergency room physician Dr. James Kneff released the plaintiff to return to work effective February 4, 2013 (Tr. 251). The Commissioner also notes that the plaintiff asked Dr. Tumkur, his treating physician, for a letter on December 10, 2013 stating "he will be ok taking the tramadol and operating a truck, or he needs to be taken off tramadol." (Tr. 442). Thus, the Commissioner makes an extremely compelling argument that the plaintiff's condition to which he attributes his disability did not last for the 12 month period required by the statute.

Rather than address these facts from that perspective, the ALJ saw them as evidence which supported his RFC finding and his finding that the plaintiff's subjective complaints were not credible beyond the limitations in the RFC. Accordingly, he continued through the sequential evaluation process.

Before discussing the plaintiff's assignments of error regarding his past relevant

work and the ALJ's treatment of Dr. Wireman's opinion, the Court will address the argument that the ALJ erred in finding at Step Five of the evaluation process that there were other jobs the plaintiff could perform in the economy. In that regard, it appears to the Court that if the plaintiff, at his age, educational level, and with his past relevant work experience, could have performed the full range of light work with no transferrable skills, he would be still be disabled under Rule 202.06 of the Grid. Neither VE testified that plaintiff had skills transferrable to other jobs besides the store clerk and truck driver jobs which constituted his past relevant work. Therefore, Rule 202.07, which would find the plaintiff *not* disabled if he had such transferrable skills, would not apply. The Commissioner does not attempt to argue with the plaintiff in this regard, but states that "the Court need not embark on an analysis of Step Five…" because the ALJ's finding at Step Four, that plaintiff could return to his past relevant work as a store clerk at the light level, was supported by substantial evidence. [Doc. 16, pgs. 15-16].

Regarding the ALJ's finding that the plaintiff could return to his past relevant work as a light store clerk, plaintiff asserts that his testimony at the administrative hearing on September 17, 2014, showed that he could not perform that job. In that regard, the plaintiff testified that his counsel was "correct" in indicating that the job "was heavy lifting as far as filling drink dispensers with ice above your head…." (Tr. 32).

The plaintiff described that job in great detail in his work history report submitted May 9, 2013 (Tr. 191). He clearly said in that report that he would have to walk for "maybe 2 hours," stand for "maybe 2 hours," and sit for "maybe 6 hours." Plaintiff

12

stated he never had to climb; stoop; kneel; crouch; crawl; handle, grab or grasp big objects; or reach. He stated that in respect to lifting and carrying he "might have stocked the cooler with drinks, 20 foot cooler." He described the heaviest weight he lifted as "probably [a] case of drinks, 20 lbs." Moreover, this was very infrequent, as the plaintiff stated he "mostly ran" the cash register. In contrast, when he described his truck driver position in that same work history report, he clearly described the lifting requirements as being sometimes as much as 50 pounds (Tr. 192).

The problem is, "heavy lifting" was not defined regarding the testimony at the hearing. There is nothing to indicate that the lifting of some quantity of ice to fill a drink dispenser would exceed the 20 pounds which the State Agency doctors found he could occasionally lift, and as to which Dr. Wireman was silent. A quantity of ice can be any weight from the sedentary range through the heavy range. Also, the ALJ clearly had the plaintiff's detailed work history report, which mentioned the greatest weight plaintiff lifted at the store as being a case of drinks which could weigh up to 20 pounds. The Court finds that the work history report's description of this job, along with the testimony of Dr. Hankins, the VE, that the plaintiff's found RFC "would not preclude performance of the prior work as a convenience store clerk" constitute substantial evidence to support the ALJ's determination that the plaintiff could return to that past relevant work.

Plaintiff also asserts that the ALJ did not factor the testimony about lifting the ice into his evaluation of the requirements of the past job. Due to the vagueness of the term "heavy lifting" and the information set out in the work history report as described above,

13

the Court finds this assertion has no merit. Also, the Court notes that the ALJ's negative determination of plaintiff's credibility appears justified, considering plaintiff was actively seeking a note from his doctor in December of 2013 that he could drive a truck, a medium occupation, while actively pursuing disability insurance benefits.

The plaintiff also asserts that the opinion of Dr. Wireman was not properly considered, and that the ALJ did not state the weight he assigned to the consultative examiner's opinion. However, the ALJ clearly noted the deficiencies he saw in the opinion, such as Dr. Wireman not having the entire medical record before him, as the State Agency physicians did. From that he concluded that the plaintiff "is not as limited as determined by Dr. Wildman." (Tr. 20). In point of fact, but for the fact that Dr. Wireman did not say one way or the other whether the plaintiff could occasionally lift 20 pounds, the standing and walking described in the work history report regarding the store clerk position matches up well with Dr. Wireman's overall assessment.[1] Dr. Wireman stated in that report that the plaintiff could "likely stand or walk for 4 hours out of an 8 hour shift…" while the work history report indicated that the plaintiff only had to stand for "maybe two hours," and walk for "maybe" that same amount of time (Tr. 302).

It appears to the Court that there was substantial evidence to support the ALJ's determination at Step Four that the plaintiff could return to his past relevant work as a store clerk. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 13] be DENIED, and the Commissioner's Motion for

---

[1] Indeed, as stated above, in December of 2013 plaintiff felt he could handle the lifting

14

Summary Judgment [Doc. 15] be GRANTED.[2]

>Respectfully submitted,

>s/ Clifton L. Corker
>United States Magistrate Judge

---

requirements attendant to being a truck driver.

[2]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).